Are you able to hear me? Yes. Who are you? Good morning my name is Andrew Huff. I am the attorney for the appellant Jeremiah Preston. May it please the court. Your honors there are basically two issues before the court this morning. One is whether the district court below was clearly erroneous in its actual findings regarding the drug quantum at issue in this case and that the application of the guidelines to that quantity led to a substantively unreasonable sentence. The second issue is whether there was a denial of due process in this case. First of all because of the erroneous factual findings which were not based on the preponderance of the evidence and secondly because of the way the plea agreement and the offer of proof were structured and written whether there was basically no way for the defendant to have any reasonable notion of what he was getting himself into by signing that plea agreement. Those are the two main arguments before the court this morning. As to the preponderance of the evidence argument. Let me ask you since you don't have a lot of time about the second issue. Your client was aware that he was being charged under an aiding and abetting theory wasn't he? Your honor he was aware of that but he was aware in as much as it related to the 6.1 gram drug deal and that was what the offer of proof and the plea agreement went to was the 6.1 gram drug deal that he sat in on which he clearly aided and abetted in and that is what he pled guilty to. Well yes that's what he pleaded guilty to. The question though is whether this is related conduct that he was aware would or could be considered. It was factually very closely related this negotiation with Jones for the additional amount. Yes your honor that's actually precisely the issue. Our position has always been and we presented evidence backing up this position which is that Preston had never any intent or capability of participating in this second deal that Jones and the confidential informant were setting up with each other and there was evidence to that effect at Mr. Preston's change of plea hearing. He explained to the court that he could have been an enforcer for that in the same way he was an enforcer for the 6.1 gram deal couldn't he? I guess it's possible but there was no evidence of that your honor. That's what the court issued. But the point is if he were aiding and abetting her in her distribution deals his role was not to provide the drugs his role was to be the big guy. Well his role as he as we presented to the court below was that he was basically to be the enforcer for this one drug deal and he was doing that in exchange for having gotten a ride up from Denver and he needed to get that ride to pick up his little brother who was getting released from a juvenile facility up here and bring him back down to Denver with him. So he was given a very limited role to sit in on this 6.1 gram drug deal and play act apart as the enforcer and he was to go back to Colorado after that and the deal that was being worked out with Jones and the confidential informant that was their deal. And Jones told Sgt. Hickman that and Sgt. Hickman testified on direct at the sentencing hearing that Jones had told him Preston didn't know that his co-defendant planned to rip off the drug informant. So Preston didn't know the details of that. I don't understand why that would help your client if he didn't know that Jones was planning to fake the sale of a pound of drugs and instead was going to rip off the informant because all that suggests is that he really thought there was a pound involved and not that it was a pretend deal. It actually makes it worse for him it seems to me. Well I think Your Honor what it indicates is that he didn't have knowledge about what was going to go on with that deal and the reason he didn't have knowledge about it is because it wasn't his deal. It was Jones's deal and he was going to leave. So regardless of whether it was a real deal or a fake deal he didn't know about it and his intent was to go right back down to Denver and before he could do that of But during the plea, did anyone mention that your client might be held responsible for 453 grams of meth? No Your Honor I don't think that drug quantum was ever mentioned and basically everyone became aware of it when the PSR came out. Well but isn't that the product of real offense sentencing? Well I wish it was because there's no real offense here. The 453 grand deal as Jones stated to law enforcement was a fictional deal. It wasn't conduct at all. It wasn't related conduct. It was it was fiction and I think that's one of the problems with the reliability of the evidence there. There's no evidence to indicate that it was something that was going to be consummated. There is on the other hand plenty of evidence that my client Mr. Preston wasn't involved that he'd come up there to get his little brother that he sent in on this drug deal and he admitted to that but that all the other evidence indicates he wasn't involved. He wasn't a you know a meth dealer. There's no history of him dealing meth with his co-defendant and his co-defendant says he didn't have knowledge of what I was planning to do with this confidential informant. So trying to wrap them up into the plans of his co-defendant without some solid evidentiary basis I think violates the basic rule that you need to have a preponderance of the evidence to hold him accountable for I think 6.1 grams is what they they used as the quantum in the offer of proof your honor but he also I think that's right I think they're about the same yes I was your honor I think it's er 29 but counsel isn't it also true that that he understood that the original charges against him included a conspiracy to distribute more than 50 grams and that he knew that he could get up to 20 years in prison all of that was also within his knowledge correct yes I mean the charges were explained to him I think the fundamental unfairness is that if you're going to engage in a plea bargaining process the defendant has to have some awareness he doesn't have to have certainty but he has to have awareness as to what he's pleading to and the PSR trying to hold him accountable for this drug deal that his co-defendant was was arranging essentially in the absence of any evidence is the core unfairness and your honors if there's no more questions I'll reserve my my time for I didn't quite hear your question your honor prior convictions involving meth no in fact during his hearing to change his or withdraw his guilty plea I examined the probation officer Andrew hedges and he's got no no intersection with methamphetamine at all your honor he had a prior conviction for conspiracy to introduce controlled substances yes he did have a conspiracy conviction trying to smuggle marijuana into a prison in Colorado your honor well when he pled guilty didn't he plead guilty to knowingly and unlawfully distributing a mixture containing a detectable amount of methamphetamine 6.1 grams of methamphetamine doesn't say anything about detectable amount and the plea well yeah I mean that's right your honor I mean it did say a detectable amount but it also specifically said both in the in the offer proof in the plea agreement of much smaller quantity of 6.1 grams or a quarter ounce no I think it means a detectable amount March or small well the argument is that the amount of 6.1 grams I mean that's what he pled guilty to and that's what his colloquy at his change of plea hearing was directed at his participation in that exchange of 6.1 grams and he takes responsibility for that good morning my name is Joe Thagard I'm an assistant United States attorneys from the Great Falls office and I represent the government in this matter I'll address the the due process issue first which Mr. Huff raised and in particular I would notice as the government points out in its brief supplemental excerpts of the record that the defendant was actually provided with a copy of a police report in this matter as part of the discovery and if one were to look at supplemental excerpts of the record pages 7 through 9 it discusses in detail not only the the facts concerning the distribution of this six grams or so of methamphetamine but all the negotiations surrounding that and the discussion between the defendant and Ms. Jones and the informant about the possible distribution of a pound of methamphetamine so certainly the defendant was aware going into plea negotiations as well as as in the change of plea hearing that there was this larger amount lurking out there and as I think the courts are you representing the government at that time yes I was your honor and did you point that out to the defendant that he could be he could be held or for a pound of methamphetamine verbally your honor I did not as I say we had made the offer of proof right I did your honor what did you say in that offer of proof basically we talked about the 6.4 grams your honor there was also some discussion in there about the negotiations however I think that that that discussion pertain more to the 6.4 grams and you also at ER 40 specified that you were relying on an aiding and abetting theory that he was abetting Jones but you never made it clear to the defendant when you made that offer of proof that that it would be implicated in a sentencing when it came to a pound of meth you never did that well I your honor I would I would I would see that the offer of proof is did you do that or didn't you in the offer of proof your honor no however you think it would have been fair for you to do that I don't think it was required frankly your honor I don't think it was a matter of if I understand it correctly the offer of proof in connection with taking a guilty plea has to do entirely and only with the charge that's made in the indictment of which the defendant is pleading guilty right that's correct your honor the other matters are issues of relevant conduct I felt that in terms of dispensing of any obligation of fairness that I might have to the defendant but that was done in the discovery process and and we relied on the fact that that it's it's common knowledge that that a defendant's relevant conduct may be broader than than that encompassed within a specific charge and so the government's position is that we we made that disclosure to the defendant he was aware of it and also as if one looks at the excerpt of the record page 23 it talks about guideline calculations being done and and certainly I don't think that we did anything to to mislead the defense matter but turning to the issue of the the the proof underlying this I think it's clear when one looks at the record that this defendant actually participated in some of the negotiations with the confidential informant concerning the purchase of a pound of methamphetamine he talked about prices and you know the defendant I think to portray him simply as a minor player in this I don't think that that's accurate with respect to the the the deal that he actually pled guilty to it's it's notable that of the nine hundred dollars in marked currency that was provided he ended up with seven hundred and eighty of that on his person at the time that he was searched and so it's the government's position that a preponderance of the evidence does support the court's findings unless the court has any further questions I'll resume my seat no further questions for me thank you he's out of time he overshot his time he's out of time I am a minute over time your honors well your client is getting a lot of months so we can give you a couple minutes thank you your honor I would just like to say that the majority of the government's argument goes did you know at the time you stood there and your client took a plea that that there'd be another pound of meth involved did you have any idea about that yes I mean we did but it was it was his co-defendant's pound of meth and you know did you advise your client look you'll get stuck here for another pound of meth when you take when you're when you're when you're making your plea here of guilty did you tell him that no your honor I mean basically I thought the pound of meth let me ask you this did you know that that he would get stuck with the pound no I did not no in fact I never thought he could because first of all it didn't exist and second of all to the extent that there was anything him to do with it it was his co-defendant I ask you did you did you consider that I mean did you know about that did you have any idea of how the sentencing guidelines work yes your honor I mean I did I did know about it I just didn't think there was any evidence to indicate that that was even a problem here did you have a copy of the police report as the government asserts that was provided to you during discovery yes we got all of the discovery your honor did you ever tell your client look you know you could be stuck here for another pound beyond that whatever it was 6.1 ounces 6.1 grams no your honor I did not it was the PSR that made it clear that that's what the stakes were prior to that I had no inkling that he could be held responsible for that I didn't know it was out there but I thought that since it didn't exist and since it was only his co-defendant that was involved in it it wouldn't affect my client so you had no inkling is that no your honor okay no other questions all right thank you the matter will stay in submission thank you your honor the next matter is US versus Horvath
judges: Pregerson, Rymer, Graber